Charlotte Brown Jacobs v. Commissioner. Percy R. Jacobs v. Commissioner.
Jacobs v. Commissioner
Docket Nos. 32931, 32933.
United States Tax Court
1952 Tax Ct. Memo LEXIS 90; 11 T.C.M. (CCH) 931; T.C.M. (RIA) 52275; September 9, 1952
William R. Green, Jr., Esq., and C. L. Johnson, C.P.A., 157 Church St., New Haven, Conn., for the petitioners. Lester H. Salter, Esq., for the respondent. KERN Memorandum Findings of Fact and Opinion By these proceedings petitioners seek a redetermination of deficiencies in income tax as follows: 1946
1947
#32931 Charlotte Brown Jacobs
$302.10
$397.42
#32933 Percy R. Jacobs
709.94
773.74
The sole issue concerns the deductibility of payments made by petitioners' partnership during the taxable years to a retired employee. Findings of Fact The stipulated facts are hereby found accordingly. Petitioners are husband and wife who, during the years in question, were partners in the conduct of a stationery store in New Haven, Connecticut. Their *91 Federal income tax returns were filed with the collector of internal revenue for the district of Connecticut. The business was operated under the name of John R. Rembert Co. It had been established by Rembert in 1887 and was incorporated on January 13, 1913, with capital of $29,000. On April 1, 1925, petitioners purchased the entire capital stock of the corporation and its shares were issued as follows: Petitioner Percy R. Jacobs
145 shares
Petitioner Charlotte B. Jacobs
142 shares
Eugene E. Jacobs, Sr.
3 shares Eugene E. Jacobs, Sr., was a nominal holder of the three shares of stock. He was a director, but never an officer of the corporation. In March, 1944, the corporation was dissolved, and its assets were transferred to a partnership comprised of petitioner Percy R. Jacobs, with a 60% interest, and petitioner Charlotte B. Jacobs, with a 40% interest. The successor partnership assumed all of the liabilities of the corporation. Eugene E. Jacobs, Sr., was the father of petitioner Percy R. Jacobs. Percy had entered the employ of the business in 1909; his father in 1917. Charlotte has been connected with the business since 1925. Eugene continued with the business *92 to the date of his retirement in 1942 at the age of 76 years. He never had a contract of employment with the company. Eugene was a man of all work. He was shipping, receiving, and stock clerk, and generally did anything and everything, and was the most valuable man the company had in looking after all details. He would report to work at 8:15 A.M. and continue on duty until 5:45 P.M., taking only time to eat a sandwich lunch on the job. Eugene had a great interest in the success of the business which he evidenced by his earnestness and industry. He was the hardest worker in the store, and was never overpaid. Eugene's salary was $50 per week prior to 1932. At that time the company's condition was such that they had to ask for a five-year moratorium on its debts. It also dismissed some employees. The remaining employees did not have their salaries diminished. Eugene, at that time, without diminishing his services, voluntarily took a 50% reduction in his pay, which continued until April 1, 1941. Thereafter, until his retirement on May 1, 1942, he was paid on account of his services compensation aggregating $50 per week. On his retirement on May 1, 1942, Eugene was paid $50 per week *93 until his death on October 15, 1951. The payments were started by the corporation and continued by the successor partnership. Eugene was paid this pension to make up for the time it was felt he was underpaid when he, but not the rest of the employees, had had a reduction in salary. The pension so paid was reasonable. Eugene maintained his own home until his death, in 1951. His wife died in 1948. The company has never had many employees. At the time of the hearing its oldest employees were Frank Haynes, who had been with the company for approximately 30 years, and Daisy Nordstrom, who had been with the company for approximately 20 years. Both of these employees are under 65 years of age. Other present employees are young people who have been employed but a short time. The company never established a formal pension plan during its existence as a corporation or partnership. No payments similar to those made to Eugene have been made to any other employees. Opinion KERN, Judge: This is a case involving the deduction of a pension payment to an employee who was the father and father-in-law of the taxpayers who owned the business. The frequent admonition is that situations which *94 are advantageous taxwise must be closely scrutinized where, as here, there is a close family relationship between the parties. We have made such a scrutiny, and are nonetheless compelled to the conclusion that these retirement payments were in payment for past uncompensated services, were reasonable, and are, therefore, deductible. We have but to envisage the same facts as applied to an employee who bore no relation to the parties to test our conclusion. The allowance of the deduction fits within the framework of the law as enunciated in McLaughlin Gormley King Company, 11 T.C. 569, where we said: * * *
"It is our conclusion that, in the absence of a contract liability, an established pension policy, or a showing that such payments were for past compensation and were reasonable in amount, the payments may not be deducted under section 23 (a). * * * (Italics supplied.) * * *
And cf. Frederick Pfeifer Corporation, 14 T.C. 569; I. Putnam, Inc., 15 T.C. 86. Here, we have found from the record that Eugene was never overpaid and was long underpaid for his services. While reasonableness is a factor, we do not believe that it is to be *95 minutely or actuarily [actuarially] computed. Under the circumstances, it treats more with a sense of equity and fair play and, in this sense, we have found that the retirement provisions, as assumed by the partnership, were reasonable. Our findings are dispositive of the case. Decision will be entered for petitioners.